## Clouse v. Anderson
*[Cite as 2 AOA 65 ]*

*Case No. 11270*
*Montgomery County, (2nd)*
*March 8, 1990*

<u>*R.C. 1343.03*</u>

*Dan D. Weiner, Suite 728, 111 Building, Dayton, Ohio 45402-1671, Attorney for Plaintiff-Appellant.*

*Andrew C. Storar, 2700 Kettering Tower, Dayton, Ohio 45423, Attorney for Defendant-Appellee.*

BROGAN, J.
Appellant, Michelle Clouse, appeals from the judgment of the trial court denying her motion for prejudgment interest.

On April 8, 1983, Clouse was a passenger in a 1978 Ford Bronco truck, driven by her sister, Carmen Baker, travelling south on Interstate 75

in Montgomery County. Appellee, Catherine Anderson, was driving a 1982 Chevrolet Cavalier, entering southbound 75 via the West Carrollton entrance ramp number 47. (Tr. 51-53). The Bronco was in the center of 3 lanes of southbound traffic when Anderson's vehicle entered the far right lane of I-75. Anderson then attempted to merge into the center lane directly in front of the Bronco. Although Anderson testified that she did not initially observe the Bronco, she stated that just prior to the accident at issue her vehicle was merely 10-15 inches from the truck's front bumper. (Tr. 171).

Upon being cut off by the Anderson vehicle, Baker honked her horn, applied her brakes and swerved hard left into the fast lane. The Bronco began to sway and Baker swerved hard right then hard left again. Finally, the Bronco flipped onto its roof and skidded a way down the interstate. Appellant instituted this action to recover for her consequent injuries.

Throughout the trial, which began on November 9, 1987, appellee contended that Baker's failure to control her vehicle was the cause of her accident. At trial, one witness testified that at the time Baker initially swerved left, there was no traffic in the far left lane. (Tr. 124).

Following the jury trial, appellant was awarded damages of $85,000 against appellee, who was found to be 100% negligent by the jury.

On November 16, 1987, appellant's judgment was journalized. On November 25, 1987, she moved for prejudgment interest pursuant to R.C. 1343.03(C), citing appellee's failure to attempt to settle the case in good faith. In his supporting memorandum, appellant's counsel indicates that shortly after he filed the lawsuit he offered to settle appellant's claim against Anderson for Anderson's policy limits of $25,000.

In his memorandum contra, counsel for appellee maintained that in his opinion, Anderson was not negligent and Baker was solely liable for the accident. Therefore, no settlement offer from his client was forthcoming.

The trial court, in a decision dated January 26, 1988, denied appellant's motion without benefit of a hearing on the issue. This judgment was subsequently vacated on February 3, 1988 due to the confusion of the trial court regarding which of several party plaintiffs had filed the motion.

The matter of pre-judgment interest was not further pursued until June 7, 1988, at which time an evidentiary hearing on appellant's motion was had. At the hearing, counsel for appellant, Dan

Weiner, asserted that appellee's counsel, James Barnhart, never responded to his letter of August 21, 1986, offering to settle appellant's claim for appellee's policy limits. In Weiner's opinion, such failure to negotiate a settlement established, *per se*, an adequate basis for the grant of pre-judgment interest. (Hearing Tr. 1-2). However, the trial court believed that additional evidence was necessary to prove that Barnhart failed to negotiate a settlement in good faith. (*Id.* at 2).

Thereafter, Weiner requested that he be given the opportunity to examine Barnhart's "entire file and maybe * * * [take] his deposition, too." (*Id.* at 3). In particular, Weiner wanted to examine the correspondence between Barnhart and appellee's insurance company. (*Id.* at 5). Weiner contended: "I'm clearly entitled to an evidentiary [sic] hearing and the right to prediscovery which, of course, I can't really get unless he's [Barnhart] willing to do it or the Court orders it." (*Id.* at 6-7).

The court recognized that appellant had over 6 months from the date of judgment to pursue discovery but failed to do so. (*Id.* at 9).

Weiner then called Barnhart as a witness as on cross-examination, at which time Barnhart stated the following:

"There was absolutely no contact, as you well know, between the Anderson vehicle and the vehicle operated by Carmen Baker * * * no contact whatsoever, and it just did not make sense to me that the operator of that vehicle seeing the Anderson vehicle come from the right lane into the center lane as the testimony showed, did not have better control over her vehicle. I felt that the accident was solely the result of the negligence of Carmen Baker in losing control, And I still feel that way." (*Id.* at 20). Further, Barnhart admitted: "I don't think I ever offered you a nickel on it because I think the case was completely defensible, and I still believe that." (*Id.* at 23).

Near the close of the hearing, Weiner again requested that Barnhart's files be made part of the record. The trial court responded:

"I remember what I heard in the trial and I don't think adding those files to the record, first, are admissable, and, second, I don't think it would add anything to his, Mr. Barnhart's statement on how he evaluated his case because he has said he evaluated the case on the facts as they came out at the trial subsequently. And that was that the Bronco flipped over because it was out of control, and that his evaluation was not the negligence of Miss Anderson." (*Id.* at 26).

Weiner was unable, at that time, to supply the court with case law regarding the accessibility of an adversary's records to prove the propriety of a grant of pre-judgment interest.

On October 3, 1988, the trial court issued its judgment overruling appellant's motion for pre-judgment interest. This appeal followed.

The first of Appellant's two assignments of error is as follows:

"The judgment of the trial judge denying prejudgment interest is against the manifest weight of the evidence, contrary to law, and an abuse of discretion, denying, plaintiff-appellant her constitutional rights of due process."

The case of *Kalain* v. *Smith* (1986), 25 Ohio St. 3d 157 governs the issue of pre-judgment interest as it relates to the settlement of tort claims. The *Kalain* Court held in its syllabus:

"A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer."

In *Kalain*, the jury awarded plaintiff $ 75,000 in damages resulting from an automobile collision with defendant. Thereafter, plaintiff moved for pre-judgment interest on the grounds that defendant failed to offer any amount in settlement of plaintiff's claims. In response, defendant's "counsel and claims superintendent *** testified that they believed Smith was neither negligent nor liable." (*Kalain, supra* at 158). The *Kalain* Court found that the record before it revealed "that appellant had a reasonable, good faith belief that he had no liability and therefore no duty to make a monetary settlement offer." (*Kalain, supra* at 159-160).

Likewise in the instant case, appellantt was awarded judgment against appellee and subsequently moved for prejudgment interest due to appellee's alleged failure to engage in good faith settlement negotiations. As did defendant in *Kalain*, appellee has consistently denied all negligence and liability.

Appellee's position is supported by these facts: (1) the driver of the Bronco observed appellee's vehicle attempting to merge into the center lane; (2) the far left lane was devoid of traffic. From these facts, appellee has theorized that the Bronco driver could have safely changed lanes, rather than swerving and overturning her vehicle, if she had been in proper control of her vehicle.

It is well-settled that "[t]he decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court." *Kalain, supra* at 159 (citing *Huffman* v. *Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83). Therefore, we may not overturn the judgment of trial court unless we find it to be unreasonable, arbitrary or capricious.

Although this court may have the issue differently, we cannot hold that the decision of the trial court to overrule appellant's motion was completely without foundation. At the hearing on June 7, 1988, appellee's counsel set forth the factual basis for his opinion that his client was in no way responsible for the injuries sustained by appellant. Because the record contains some evidence of appellee's good faith reasonable belief in her lack of liability, we are constrained to hold that the trial court did not abuse its discretion in overruling appellant's motion for pre-judgment interest.

Appellant's first assignment of error is overruled.

Appellant's second assignment of error is as follows:

"The trial court committed error prejudicial to the plaintiff-appellant by refusing to grant an evidentiary hearing and to permit mr. Barnhart's file and the investigating claim examiner's file to be made a part of the record for appeal purposes and by refusing to at least conduct an in camera inspection, thereby denying plaintiff-appellant her constitutional rights to due process."

Appellant argues that the trial court erred in summarily issuing its initial decision of January 26, 1988, (subsequently vacated), without scheduling a hearing on the matter of pre-judgment interest pursuant to R.C. 1343.03(C). Further, appellant contends that the notice of hearing scheduled for June 7, 1988 failed to specify that it would be evidentiary in nature. Finally, appellant argues that the trial court erroneously denied her the opportunity to discover the files of appellee's attorney and her insurance company as permitted by *Peyko* v. *Frederick* (1986), 25 Ohio St. 3d 164.

The statutory section governing this assignment of error, R.C. 1343.03(C), reads as follows:

"(C)Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled

by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

Initially, we note that we are not called upon to decide whether R.C. 1343.03(C) mandates a hearing on the issue of pre-judgment interest. Therefore, we need not consider the propriety of the trial court's issuance of its initial decision without benefit of hearing. However, once this procedure became known to appellant, we find that it was incumbent upon her, as movant, to ensure that an evidentiary hearing would be scheduled. However, the record is devoid of evidence that appellant moved to protect the rights which she now claims have been violated.

Furthermore, although appellant is plainly aware that a hearing upon the issue of pre-judgment interest is evidentiary in nature, (see King v. Mohre (1986), 32 Ohio App. 3d 560), her counsel contends that the notice of the June 7, 1988 hearing failed to specify that it would be evidentiary.

Appellant cannot have it both ways. The record reflects that over 6 months passed between the time appellant's judgment was journalized to the time her motion was scheduled for a hearing. At no time did appellant pursue the discovery of documents now claimed to be denied her. We find that appellant was cognizant of the evidentiary nature of a hearing upon her motion and had sufficient time in which to procure proof of the validity of her claim to pre-judgment interest. Nonetheless, the discovery of appellee's files was not diligently pursued.

We find that appellant misperceives the decision in the case of Peyko v. Frederick, supra. Therein, the Supreme Court held:

"1. When a plaintiff, having obtained a judgment against a defendant, files a motion for prejudgment interest on the amount of that judgment pursuant to R.C. 1343.03(C), the plaintiff, upon a showing of "good cause" pursuant to Civ. R. 26(B)(3), may have access through discovery to those portions of the defendant's insurer's "claims file" that are not shown by the defense to be privileged attorney-client communications.

"2. If the defense asserts the attorney-client privilege with regard to the contents of the 'claims file,' the trial court shall determine by in camera inspection which portions of the file, if any, are so privileged. The plaintiff then shall be granted access to the non-privilege portions of the file (Peyko, supra, syllabus 1 and 2). Appellant asserts that pursuant to Peyko, she is entitled to examine both the file of appellee's counsel and the file of appellee's insurance adjustor. We find that Peyko grants only the right to discover an 'insurer's 'claims file'; access to the files of adversary counsel was not an issue in that case."

Further, Peyko indicates that the trial court will permit discovery of an insurer's claims file upon a showing of "good cause." We hold that appellant could not show good cause pursuant to Civ. R. 26(B)(3) where she has not been previously diligent in the pursuit of evidence to support her claim to pre-judgment interest. (See Pickett v. L.R Ryan, Inc. (E.D. S.C. 1965), 237 F. Supp. 198).

Appellant's second assignment of error is overruled.

*Judgment affirmed.*

WILSON, J., and FAIN, J., Concur.